UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ANTWONITA L. BUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:17CV662-PPS/MGG |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION AND ORDER**

Antwonita Butler appeals the Social Security Administration's decision to deny her application for disability benefits. An administrative law judge found that Butler was not disabled within the meaning of the Social Security Act, and Butler challenges that decision on two grounds — one concerning the residual functional capacity (RFC) assigned to Butler and the other relating to a credibility decision made by the ALJ. Neither issue is grounds for reversal.

It certainly seems that Butler has a host of medical problems. The ALJ found that Butler has several severe impairments including lumbar degenerative disc disease, plantar fasciitis, an obese body habitus, a depressive disorder and anxiety disorder. [A.R. 18.] The ALJ also found that Butler has a number of non-severe impairments. [*Id.* at 18-19.] The ALJ provided a comprehensive description of the medical evidence in the record which need not be repeated here. [*See* A.R. at 16-39.]

Before getting into the guts of the arguments, let's start with some basics on what my role is in this process. It is not to determine from scratch whether or not Butler is disabled and entitled to benefits. Instead, my review of the ALJ's findings is deferential, to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). If substantial evidence supports the Commissioner's factual findings, they are conclusive. 42 U.S.C. §405(g). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "Substantial evidence" is more than a "scintilla" of evidence, but it's less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). So the review is a light one. But of course, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Butler raises two issues with the ALJ's decision. The first issue concerns the RFC assigned to Butler by the ALJ. The RFC is a measure of the work that someone is capable of performing despite their severe and non-severe impairments. In other words, the RFC must take into account all of the applicant's impairments to determine whether there is any work that the person is capable of doing. Butler claims that the RFC assigned to her by the ALJ failed to adequately take into account the evidence of her ongoing anxiety, depression, and psychotic features. The second issue is the ALJ's

2

credibility findings. The ALJ looked askance at some of Butler's testimony, and the issue is whether those credibility findings are supported by substantial evidence. I'll take up each of these issues in turn.

**The RFC Determination**

Butler first challenges the ALJ's determination of Butler's RFC, which Butler says did not include certain well-supported limitations urged by Butler, including her severe anxiety, depression, and psychotic features such as hallucinations. The ALJ found that Butler suffered from the severe impairments of a depressive disorder and an anxiety disorder, in addition to other severe physical impairments. The ALJ determined that Butler had the RFC to perform sedentary work and that she could follow simple, but not detailed, instructions and could perform simple, routine tasks but not always at a production-rate pace. [A.R. at 25.] In spite of this, Butler argues that the ALJ's RFC limitation is insufficient to address her deficits in attention and concentration. Butler is essentially arguing that the ALJ erred in her interpretation of the medical evidence in reaching her conclusion that additional limitations should not be included in Butler's RFC.

The ALJ considered the medical evidence as a whole and determined that her psychological limitations were not as severe as alleged. As to her hallucinations, the ALJ noted that she had denied hallucinations on several occasions and importantly, no clinician had ever noted responses to internal stimuli. The ALJ also relied in part on the

3

fact that Butler had been non-compliant with her care and medications and had not decompensated after long periods of noncompliance. [A.R. at 31.]

Butler claims that the ALJ ignored the diagnosis of Butler's treating physician and impermissibly played doctor. It's not clear to me what treating physician Butler is referring to. But Butler does reference several evaluations that she says support including her mental limitations as alleged in the RFC. First, Butler argues that a report compiled by Warren Sibilla, Jr., Ph.D. supports her claims. But this report was completed in 2008 – six years prior to the alleged onset date. [A.R. at 335.] A report authored six years prior to the alleged onset date is hardly persuasive evidence. And in all events Dr. Sibilla noted that although Butler's mood was depressed, she was alert and engaged, demonstrated a competent orientation to person, place, time, and situation, demonstrated no gross impairment in her speech, and that her thoughts were goal-directed and topic-specific. [*Id.*] Moreover, Butler "denied any psychotic related symptomatology" and was able to answer some of the simple calculations and recall questions posed to her. [*Id.* at 336.] It is true that Dr. Sibilla diagnosed Butler with "Major Depressive Episode, Moderate Severity." [*Id.* at 337.] But the ALJ made a reasoned decision to discount the report given the fact that it had a thick layer of dust on it and did not support Butler's subjective symptoms in any event.

Second, Butler points to an examination by Alan Wax, Ph.D., conducted in January of 2015, in which he found that Butler could recall none of the three words after five minutes, failed both trials of six digits forward, failed both trials of five digits

4

backwards, and was unable to complete serial sevens and serial threes. [A.R. at 464-67.] But the ALJ discussed Dr. Wax's report at length and expressly acknowledged that Butler could not complete some of the tasks mentioned above. [A.R. at 27.] The ALJ went on to note portions of Dr. Wax's report that indicated Butler's mathematical skills were preserved, her abstract thought processes were within functional limits, and her judgment and insight were intact. [*Id.*] Dr. Wax diagnosed Butler with a depressive disorder, but he offered no opinion on what limitations her symptoms would pose for her. [*Id.*]

The ALJ reasonably determined that Dr. Wax's opinion supported the conclusion that Butler could perform the demand of unskilled work, which includes following simple but not detailed instructions and performing simple, routine tasks. The ALJ included an additional limitation to address Butler's impaired recall, restricting her to work that did not require a consistent production-rate pace. [A.R. at 25.] For reasons that I will discuss further below, the ALJ reasonably determined that Butler's subjective complaints of symptoms were not entirely credible. Thus, the record did not support any additional limitations based on her mental impairments.

Butler cites to two additional pieces of evidence that she argues support her claim that additional limitations based on her depression, anxiety, and hallucinations should have been included in her RFC assessment. She claims that Roohi Sualeh, M.D. diagnosed her with PTSD, bipolar disorder, and generalized anxiety. However, on September 14, 2016, this same doctor also observed that Butler was giving lengthy

5

answers with unnecessary details "in order to convince this physician." [A.R. at 737.] Dr. Sualeh also indicated that Butler "reports that she hears voices," but there appears to be nothing in the report that verifies these reports in any way. [*Id.*] Dr. Sualeh observed that Butler was alert, oriented to time, place, and person, and that her attention was okay. [*Id.*] As the ALJ noted in her opinion, Dr. Sualeh also noted that Butler "is seen after a year and her presentation is pretty much the same as a year ago." [*Id.*] This suggested that, despite not receiving treatment by Dr. Sualeh for a year, her mental state had not decompensated.

Butler also refers to several examinations conducted by Sandy Imanse, LCSW, in 2016. Imanse noted hallucinations in Butler's record, but this appears to have been based solely on Butler's reports that she heard voices. Indeed, Imanse's assessment on February 12, 2016 indicates that Butler "is able to respond appropriately to questions although she states that she 'hears voices.'" [A.R. at 691.] Imanse also noted on another visit that "Bipolar disorder [patient] states that this is her diagnosis although she states that she 'hears voices.'" [A.R. at 679.] Other assessments completed by Imanse in March 2016 noted that Butler's cognitive functioning was not impaired, that her hygiene was good, her appearance was calm, and no behavior abnormalities were demonstrated. [A.R. at 679, 686.]

The ALJ considered all of the evidence discussed above, but the ALJ also considered evidence from multiple doctors' visits in which Butler denied these same symptoms. For example, at a physical exam conducted by Dr. Curry on September 10,

6

2014 — immediately prior to the alleged onset date — Butler denied mental illness. [A.R. at 436.] So although Butler reported psychological symptoms at the February 2015 psychological exam, just a few months prior, she had denied all psychological issues. [*Id.*] Ultimately, despite mixed medical evidence in the record regarding the severity of Butler's mental impairments, the ALJ did include a limitation based on Butler's anxiety and depression. Based on those impairments, the ALJ limited Butler to unskilled work that did not require a consistent production-rate pace.

In sum, the ALJ discussed all of the medical evidence, and Butler is unable to point to any evidence that the ALJ impermissibly failed to consider. Instead, her challenge is to the weighing of the medical evidence. The ALJ was tasked with assessing Butler's RFC by evaluating the "objective medical evidence and other evidence" to determine whether it was consistent with Butler's subjective statements regarding her impairments. 20 C.F.R. § 404.1529(a), (d)(3). An ALJ must only "minimally articulate his or her justification for rejecting specific evidence of a disability." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). The ALJ here met that standard and reasonably took into account appropriate limitations for Butler's alleged mental impairments of anxiety and depression that were supported by the objective medical evidence.

### **The Credibility Determination**

Butler's second challenge is to the ALJ's determination that she was not credible. The ALJ pointed to several factors when discounting Butler's credibility. In particular,

7

the ALJ noted that Butler worked part time during the same period that she claimed to have been disabled, that Butler's husband had reported that Butler could maintain her hygiene and prepare simple daily routines, that Butler interacted with family and friends, and that there were inconsistencies between her allegations of hallucinations and both her doctors' observations and her own reports to her doctors.

First, Butler takes issue with the ALJ's finding that Butler's continuing to work part time during the claimed period of disability diminished her credibility. Butler says that working part time is allowed under the statute and notes that ultimately Butler's conditioned worsened to the point that she had to stop working. She claims that her desire to work is actually a testament to her desire to avoid filing for disability, not a reason to diminish her credibility.

It is true that the ALJ cited Butler's part-time work as evidence that she was not as limited as she alleged. However, the ALJ expressly noted that this was "one of many factors used in assessing the weight to be afforded her subjective claims." [A.R. at 22.] The ALJ recognized that "work activity at reduced levels is not synonymous with not being found disabled." [*Id.*] Instead, Butler's work activity was relevant to the extent that it indicated that she was "able to function at a level higher than that reported." [*Id.*] It has repeatedly been held that the claimant's ability to engage in even part-time work cuts against her claim that she is totally disabled. *See, e.g*, *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008).

Second, Butler argues that the ALJ improperly discredited Butler's credibility on the basis that Butler's husband's interview conflicted with Butler's subjective symptoms. On March 28, 2015, Butler's husband reported that she maintained her hygiene daily without prompting, prepared simple meals, could play games on her tablet, watched television, and went to the store. [A.R. at 294.] He also reported that she attended church and was sociable there. Although she was a bit withdrawn, she interacted appropriately. [*Id.*]

Butler points out that this interview of her husband was conducted two weeks prior to Butler's first hospitalization, and she claims that her conditioned worsened from this point. But Butler has alleged an onset date of October 1, 2014, well before her husband's report that she could complete simple tasks. And her husband's interview was completed during the same time period that Butler alleges she had severe symptoms. The ALJ reasonably cited to this statement as evidence of inconsistencies between what Butler was reporting to her doctors and what Butler was actually doing at home. For example, in January of 2015, in a mental health examination with Alan Wax, Ph.D., Butler complained of depression, a lack of motivation to do any household chores, and that she was skipping bathing. [A.R. at 464.] She also reported to him that she would go days without sleeping and that she would only sometimes do household chores. [*Id.*] The report from Butler's husband undermines these complaints.

Butler says that this interview with her husband is not substantial evidence. But the problem with this argument is that the ALJ did not rely solely on Butler's husband's

9

report. Instead, the ALJ considered the observations of Butler's doctors during their examinations and Butler's own reports of what she could do on a daily basis as evidence that Butler's symptoms were not as severe as alleged. [*See* A.R. at 23-24.] For example, Butler reported that she could prepare her own meals, go to doctor's appointments independently, attend church, track her medications, and read the bible. [*Id.*] At the hearing, Butler explained that she was able to make her bed, clean up after herself after meals, and shower. [A.R. at 62.] She also helped the children with whom she was living with their homework and helped prepare meals. [A.R. at 75.]

Next, Butler argues that the ALJ improperly found that she was capable of greater social interaction than she alleged and cited her interaction with friends and family with whom she lived. Butler believes this is an error because it mischaracterizes what the evidence showed – that in fact Butler spent most of her time alone in her bedroom. However, there was sufficient reason to discredit Butler's testimony on this point because there were other reports from her doctors that she was cooperative and friendly at her appointments. Additionally, her husband reported that she attended church and was sociable there. [A.R. at 294.]

Finally, Butler challenges the ALJ's discrediting of Butler's allegations that she experienced hallucinations and psychosis. The ALJ acknowledged Butler's complaints of hallucinations but found that the objective medical evidence did not support her assertions. [*Id.* at 28.] In her decision, the ALJ discussed a significant amount of evidence suggesting that Butler's subjective complaints of hallucinations were not

credible. For example, at the psychological consultative exam with Alan Wax, Ph.D., on January 13, 2015, Butler identified only depression in terms of psychological issues that were affecting her. [A.R. at 464.] She made no reference to her having hallucinations. [A.R. 24]. What's more, Dr. Wax noted at this exam that Butler's hygiene was intact, she had no abnormal psychomotor movements, and that although her mood and affect were flat, she was friendly and cooperative throughout the evaluation. [*Id.*] Although he diagnosed her with a depressive disorder, Dr. Wax said nothing of psychosis or hallucinations.

    The ALJ relied, in part, on the inconsistencies in the medical records to discredit Butler's subjective symptoms, which the ALJ discussed at length. For example, as just noted, the ALJ pointed to the January 13, 2015 psychological examination with Dr. Wax, where Butler did not report any hallucinations and instead told him about her depression, which she says first manifested in 1992. But only one month later, on February 17, 2015, at the physical consultative examination, she continued to allege symptoms never diagnosed, and this time she alleged even more severe psychological symptoms that she did not report at the earlier psychological exam. At this physical exam, she began reporting manic depression with psychotic features, but this time she reported it had manifested in 1995. She also reported that she hears voices and sees shadows. [A.R. at 469.] Despite her reports of hallucinations, the examiner noted that, although her mood was depressed, she was alert and oriented in person, place, and time, with normal speech, insight and judgment. [A.R. at 472.]

11

Notwithstanding her own report of these symptoms to the physical examiner in February 2015, Butler again either denied or did not report hallucinations at her inpatient discharge exam in April of 2015 [A.R. at 477], during her next hospitalization in June of 2015 [A.R. at 555], and at an appointment with a psychiatrist in May of 2015 [A.R. at 527].

Butler claims that she did not report hallucinations on these occasions because she was afraid of being hospitalized and wanted to be discharged. But the ALJ properly relied on Butler's repeated denials of these symptoms to determine that her reports were inconsistent. These inconsistencies suggested that Butler was not credible. Moreover, the ALJ also recognized that in addition to her inconsistent reports, no clinician that treated Butler observed any sign or symptom suggesting that she was experiencing these hallucinations. [A.R. at 28.] As the ALJ expressly noted, there was never an objective corroboration of Butler's subjective reports of hallucinations, which again she sometimes denied having. Indeed, the opposite was true because clinicians at multiple appointments described her as calm, cooperative, and logical, and no clinician observed that she was responsive to internal stimuli. [*Id.*] For example, on May 14, 2015, Dr. Roohi Sualeh noted that there were no perceptual disturbances, no auditory hallucinations, no visual hallucinations, no persecutory delusions, and that Butler's judgment and insight were intact. [A.R. at 527.] As explained throughout this Opinion and the ALJ's opinion, multiple clinicians on multiple occasions observed normal behavior from Butler at her appointments.

There are good reasons why an ALJ's credibility assessment must stand "as long as there is some support in the record." *Berger*, 516 F.3d at 546. Here, there was more than enough support in the record – even more than I have highlighted here – for the ALJ's credibility assessment. It was a far cry from "patently wrong." And so, because the ALJ's decision was supported by substantial evidence, it must be affirmed.

## Conclusion

The final decision of the Commissioner of Social Security denying plaintiff Antwonita Butler's application for a period of disability and disability insurance benefits is **AFFIRMED**.

The Clerk shall enter judgment in favor of Defendant and against Plaintiff.

**SO ORDERED**.

ENTERED: August 30, 2018.

      s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**